**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

ALONZO TAYLOR,

Plaintiff,

v.

AMCOR FLEXIBLES INC.,

Defendant.

Civil No. 07-3477-NLH

**OPINION**

**APPEARANCES:**

Anthony J. DiMarino, III, Esquire
A.J. DiMarino, III, P.C.
57 Euclid Street, Suite A
Woodbury, NJ 08096

H. Frances DeLone, Jr., Esquire
P.O. Box 361
Wayne, PA 19087
*Attorneys for Plaintiff*

Devjani Mishra, Esquire
Douglas B. Lipsky, Esquire
Seyfarth Shaw LLP
620 Eighth Avenue
New York, NY 10018-1405
*Attorneys for Defendant*

**HILLMAN**, District Judge

This matter comes before the Court on Defendant's Motion to Strike the Testimony of Plaintiff's Wife, for Sanctions and for Summary Judgment on Count II of Plaintiff's Complaint [Doc. 76]. For the reasons expressed below, Defendant's Motion will be denied.

## I. BACKGROUND

The factual history of this case has been set out at length in the Court's November 4, 2009 Opinion, and will not be repeated except to the extent relevant to the current Motion. On February 16, 2006, Plaintiff was terminated from his employment with Defendant Amcor Flexibles, Inc. Several months later, on May 5, 2006, Plaintiff filed a charge of racial discrimination against Defendant with the New Jersey Division on Civil Rights and the Equal Employment Opportunity Commission (hereinafter "EEOC"). One month later, on June 5, 2006 at 5:13 a.m., Plaintiff alleges that a person called his home and screamed the words, "[n]iggers aren't qualified to work in this business. Why you niggers complaining. Niggers shouldn't be in this business" when his wife (hereinafter "Mrs. Taylor") answered the phone. Doc. 87-2, Exhibit C, Dep. 67. The caller ID function on Plaintiff's telephone indicated the call originated from a phone assigned to Rexam Healthcare, an organization owned by Defendant. Mrs. Taylor took a photograph of the caller ID. Plaintiff admits he was asleep when the call occurred, did not hear the exchange on the telephone and does not know who made the call. He also did not learn about the call until Mrs. Taylor informed him of it "later that morning." Id. at 70.

On July 27, 2007, Plaintiff filed his Complaint in this case, alleging counts for discrimination, retaliation, and

defamation. During the course of discovery, Defendant served a deposition subpoena upon Mrs. Taylor. Shortly thereafter, on October 27, 2008, Plaintiff's counsel represented to the magistrate judge assigned to the matter, Judge Schneider, that Mrs. Taylor was unavailable to be deposed because of health concerns related to her *in vitro* fertilization treatments. Specifically, Mrs. Taylor's doctor advised her to avoid any stress while undergoing the *in vitro* fertilization procedure. After receiving this information, Judge Schneider, in an October 27, 2008 Order, stated that "1. Pretrial factual discovery . . . shall be concluded by . . . November 28, 2008" and "3. If Mrs. Taylor will testify at trial or if she will be submitting an Affidavit in opposition to defendant's Motion for Summary Judgment, she shall be made available for deposition." Doc. 24.

Approximately four months later, Defendant moved for Summary Judgment on Plaintiff's claims and Plaintiff moved for Partial Summary Judgment.[1] On November 4, 2009, the Court denied Plaintiff's Motion and granted in part and denied in part Defendant's Motion. Summary judgment was entered in favor of Defendant with respect to Counts I, discrimination, and III, defamation, and denied with respect to Count II, retaliation. On November 20, 2009, Defendant moved for reconsideration of the

[1] Pursuant to Judge Schneider's October 27, 2008 Order, Plaintiff did not submit an affidavit from Mrs. Taylor because she was not deposed.

Court's November 4, 2009 Order denying summary judgment on Count II of Plaintiff's Complaint.

On June 25, 2010, the Court granted in part and denied in part Defendant's Motion for Reconsideration. The Court concluded "it did not specifically address the unavailability of Plaintiff's wife as a witness" and that her unavailability to testify "adds a layer of hearsay to any testimony regarding the contents of the allegedly retaliatory phone call she received and calls into question the admissibility of the proffered photograph of Plaintiff's caller-id. . . . [T]hese issues could potentially change the Court's holding on Plaintiff's retaliation claim and that further argument is necessary to determine the scope of Plaintiff's potential testimony regarding the phone call and photograph and whether such testimony would fall under any hearsay exceptions or is otherwise admissible before the Court can make a final determination on this issue." Doc. 67. The remainder of Defendant's arguments for reconsideration were denied as already considered and rejected by the Court's November 4, 2009 Opinion.

To address the hearsay issue, the Court held a hearing on July 21, 2010, and ruled that Defendant could take the deposition of Mrs. Taylor.[2] Defendant was permitted to question Mrs. Taylor

[2] Several days before the hearing, Plaintiff's counsel informed Defendant's counsel that Mrs. Taylor was now available to be deposed.

on the circumstances of her previous unavailability as well the circumstances pertaining to the June 5, 2006 call. After the deposition, the Court opined that Defendant may make "any motion they feel appropriate as it relates to the admissibility of her [Mrs. Taylor's] testimony at trial. Both as [to] procedural matter[s] and as an evidentiary matter, and allow them to make a renewed dispositive motion on the remaining claim in the case based on that testimony." Doc. 75, Tr. 21.

At her deposition, Mrs. Taylor detailed the restrictions related to her *in vitro* fertilization treatments. She recalled that her doctor directed her to "lay low, stay of my feet, keep my feet up, [and] stay out of stress." Doc. 87-2, Exhibit C, Dep. 48. Mrs. Taylor additionally testified that she never asked her doctor whether she could give a deposition for the present case and admitted that the week of August 3, 2010 was the first time she ever discussed with anyone whether she could give a deposition. With respect to the alleged June 5, 2006 telephone call, Mrs. Taylor relayed the details of the call and acknowledged that she took a picture of the caller-id sometime after the call. Defendant now moves to Strike the Testimony of Mrs. Taylor, for Sanctions and for Summary Judgment on Count II of Plaintiff's Complaint.[3] Plaintiff opposes the Motion.

---

[3] The Court has jurisdiction over Plaintiff's Complaint pursuant to 28 U.S.C. § 1331 because Plaintiff alleged a violation of Title VII of the Civil Rights Act of 1964 ("Title

## **II. DISCUSSION**

### **A. Mrs. Taylor's Deposition**

Defendant argues Mrs. Taylor's deposition testimony should be stricken because Plaintiff acted in bad faith by refusing to provide her for deposition during the discovery period. Plaintiff contends sanctions are not warranted because Mrs. Taylor was undergoing *in vitro* fertilization treatments at that time and could not be deposed because of the stress involved in taking a deposition. Plaintiff further contends that Judge Schneider's October 27, 2008 Order did not indicate when Mrs. Taylor's deposition had to occur.

Federal Rule of Civil Procedure 37 authorizes courts to sanction parties for discovery violations. Courts have "broad discretion" concerning the "type and degree" of sanctions it imposes. Wachtel v. Health Net, Inc., 239 F.R.D. 81, 84 (D.N.J. 2006); *see* Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 538 (3d Cir. 2007) ("The decision to impose sanctions for discovery violations and any determination as to what sanctions are appropriate are matters generally entrusted to the discretion of the district court"). This broad discretion, however, is "limited by two standards." Capogrosso v. State Farm Ins. Co., No. 08-2229, No. 07-5324, 2010 WL 3404974, at * 8 (D.N.J. Aug. 26, 2010) (quoting Harris v. City of Philadelphia, 47 F.3d 1311,

---

VII"), 42 U.S.C. § 2000e.

1330 (3d Cir. 1995)). "First, any sanction must be 'just'; second, the [s]anction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." Id. (quoting Harris, at 47 F.3d at 1330).

Federal Rule of Civil Procedure 37 specifically provides that "if a party . . . fails to obey an order to provide or permit discovery," as a sanction, the court may prohibit the "disobedient party . . . from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii). Exclusion of evidence, however, is an "extreme sanction and normally not imposed absent willful deception or flagrant disregard" of a court order. Access 4 All, Inc. v. ANI Assocs., Inc., No. 04-6297, 2007 WL 178239, at * 3 (D.N.J. Jan. 27, 2007) (quoting in part Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 905 (3d Cir.1977) (overruled on other grounds, 777 F.2d 113 (3d Cir. 1985))) (further quotations, citations omitted). "The Third Circuit has, on several occasions, manifested a distinct aversion to the exclusion of important testimony absent evidence of extreme neglect or bad faith on the part of the proponent of the testimony." Mercedes Benz USA LLC v. Coast Automotive Group Ltd., No. 99-3121, 2008 WL 4378294, at * 3 (D.N.J. Sept. 23, 2008) (further quotations, citations omitted). Therefore, when considering whether to exclude evidence, "[d]istrict courts must exercise particular restraint." Id. In its determination whether

to impose the sanction of exclusion of evidence for failure to comply with a court order, courts should consider:

> (1) the prejudice or surprise to the party against whom the withheld evidence will be offered; (2) the ability to cure the prejudice; (3) the extent to which the evidence would disrupt the orderly and efficient trial of the case; and (4) bad faith or willfulness of the delinquent party in failing to comply with the court's orders.[4]

ANI Assocs., Inc., 2007 WL 178239 at * 3; *see* Hayes v. Cha, 338 F.Supp. 2d 470, 502 (D.N.J. 2004) (noting similar factors); *see also* Wachtel, 239 F.R.D. at 105 (stating similarly).

Applying the factors to the present matter, the Court will not strike Mrs. Taylor's deposition testimony.[5] Defendant did not suffer prejudice as a result of Plaintiff's actions. Although the deposition occurred almost two years[6] after the conclusion of discovery, Defendant was permitted to question Mrs. Taylor on all circumstances surrounding her initial unavailability and on all matters relating to the call, conversation and photograph of the caller-id. Furthermore, any

---

[4] At least one court in this district noted that "[a]n important final consideration is the importance of the excluded testimony to the proffering party's case." Seltzer v. I.C. Optics, Ltd., 339 F. Supp.2d 601, 607 (D.N.J. 2004).

[5] As an initial matter, the Court will assume, without deciding, that Plaintiff failed to comply with a Court Order.

[6] Plaintiff cannot be held entirely liable for the approximate two-year delay. A significant portion of that delay arises from the delay inherent in a crowded docket. *See* Doc. 75, Tr. 20.

prejudice Defendant suffered when the Court permitted Mrs. Taylor's deposition was cured. At the July 21, 2010 hearing, the Court explicitly permitted Defendant to file a renewed motion for summary judgment on Plaintiff's remaining retaliation claim.[7]

With respect to the third factor, disruption of trial, a final pretrial order was never entered. Therefore, permitting Mrs. Taylor's testimony had no effect on the orderly trial of this case. Turning to the fourth factor, although it appears clear that Plaintiff proffered his wife's testimony only when it may have appeared necessary to avoid a possible dismissal, the Court cannot conclude he acted with such bad faith or extreme neglect as to constitute "willful deception" or "flagrant disregard" of Judge Schneider's October 27, 2008 Order. The Court is not presented with a situation where Mrs. Taylor blatantly disregarded or ignored an order to be deposed. Rather, Judge Schneider's Order imposed a discovery deadline and directed Plaintiff to ensure Mrs. Taylor's availability for deposition if she were to testify at trial or submit an affidavit in opposition to summary judgment.

After the discovery deadline expired, Plaintiff realized Mrs. Taylor's testimony was necessary for his case. Even though Mrs. Taylor never specifically discussed with her doctor or

---

[7] As discussed later in this Opinion, the Court, however, limited the Motion to procedural and evidentiary matters relating to Mrs. Taylor's testimony at trial.

anyone whether she could sit for a deposition, Plaintiff informed Defendant and Judge Schneider that Mrs. Taylor's unavailability was the result of her doctor's order to avoid stress during her *in vitro* fertilization treatments. Although Plaintiff's late proffer of his wife's testimony is troubling and inconsistent with an obligation of diligence in the litigation process, the Court cannot conclude that Plaintiff acted in flagrant or willful disregard of a court order. Plaintiff never submitted an affidavit from Mrs. Taylor, nor did he lie or misrepresent facts to the Court. The information he relayed was apparently accurate. Mrs. Taylor was informed by her doctor to avoid stress, and depositions may, in fact, be stressful events. Despite the delay of Mrs. Taylor's deposition because of Plaintiff's conduct, the Court cannot conclude that Plaintiff acted with extreme neglect or bad faith when he represented to the Court the reason for Mrs. Taylor's unavailability.

Lastly, Mrs. Taylor's deposition testimony is important to what remains of Plaintiff's case. Without Mrs. Taylor's testimony, summary judgment must be entered in favor of Defendant because Plaintiff could not establish either the authenticity of the caller-id pictures or the content of the phone call. Although Defendant does not request for the Court to sanction Plaintiff with dismissal of his Complaint, the Court is very mindful that the sanction of striking Mrs. Taylor's testimony

essentially equates to a sanction of dismissal of Plaintiff's claim. *See* N'Jie v. Cheung, No. 09-919, 2010 WL 3259793, at * 7 (D.N.J. Aug. 16, 2010) ("Dismissal, however, is an 'extreme' sanction and is disfavored absent the most egregious circumstances). Plaintiff's conduct does not warrant this punishment. Furthermore, a more "just" result is one based on the merits rather than one derived from a sanction for a procedural default. *See* Brimage v. Hayman, No. 06-1565, 2010 WL 3339830, at * 1 (D.N.J. Aug. 23, 2010) ("[I]t is well settled that the preference of the Third Circuit is to decide cases on the merits"). Conscious of this result, the absence of prejudice to Defendant and the lack of bad faith or willfulness of behalf of Plaintiff, the Court concludes that striking Mrs. Taylor's testimony is an inappropriate sanction.[8]

**B. Standard for Summary Judgment**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

[8] Because the Court concludes sanctions are inappropriate, it will not award attorneys' fees or other monetary penalties.

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**C. Plaintiff's Retaliation Claim**

In Count II of Plaintiff's Complaint, he asserts that Defendant retaliated against him, in violation of both Title VII and the New Jersey Law Against Discrimination (hereinafter "NJLAD"), after he filed a complaint with the Equal Employment Opportunity Commission. After he filed his EEOC complaint, Plaintiff alleges that a harassing phone call was made to his home by someone using a phone number registered to Defendant.

Claims of retaliation under both Title VII and the NJLAD are analyzed under the well established burden shifting framework of McDonnell Douglas.[9] *See* McDonnell Douglas Corp. v. Green, 411 U.S. 792, 803-05 (1973). Under that framework, a plaintiff must first establish a *prima facie* case by showing that: (1) he engaged in protected employee activity; (2) the employer took adverse action against him after, or contemporaneous with, his activity; and (3) a causal link exists between his activity and the employer's action against him. Muzslay v. City of Ocean City, 238 Fed. Appx. 785, 789 (3d Cir. 2007) (citing Abramson v. William Paterson College, 260 F.3d 265, 286 (3d Cir. 2001)).

---

[9] Both the Third Circuit and New Jersey courts have long recognized the symmetry between retaliation claims under the NJLAD and Title VII. *See* McKenna v. Pacific Rail Serv., 32 F.3d 820, 827 (3d Cir. 1994) ("The New Jersey Supreme Court has generally looked to standards developed under federal anti-discrimination law for guidance in construing the LAD."); Grigoletti v. Ortho Pharmaceutical Corp., 570 A.2d 903, 912 (N.J. 1990) ("We have recognized a . . . need to harmonize our LAD with Title VII and have borrowed heavily from the federal experience to assure some reasonable degree of symmetry and uniformity.").

Should the plaintiff establish a *prime facie* case, a presumption of discrimination is created and the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its actions. McDonnell Douglas, 411 U.S. at 803. Once the employer answers its relatively light burden by articulating a legitimate, nondiscriminatory reason for the unfavorable employment decision, the burden of production rebounds to the plaintiff, who must show by a preponderance of the evidence that the employer's explanation was merely a pretext for its actions, thus meeting the plaintiff's burden of persuasion. Id.

The parties do not dispute that Plaintiff's EEOC complaint constitutes protected activity. Accordingly, the only question is whether Defendant took an adverse action against Plaintiff because he filed his complaint. Plaintiff asserts that approximately one month after he filed his EEOC claim, someone called his house at 5:13 a.m. from a phone number registered to Rexam Healthcare, a subsidiary of Amcor, and said, "[n]iggers aren't qualified to work in this business. Why you niggers complaining. Niggers shouldn't be in this business." Doc. 87-2, Exhibit C, Dep. 67. As evidence of the phone call, Plaintiff submitted a photograph of the caller-ID screen from his telephone.

In Opposition, Defendant asserts it is entitled to summary judgment because Plaintiff cannot establish his retaliation

claim. Defendant argues Plaintiff cannot prove the identity of the caller, therefore, liability cannot be imputed to Defendant. Further, Defendant contends Plaintiff failed to present any evidence that anyone at the facility where the phone used to make the call was located had any knowledge of Plaintiff's protected activity, and so Plaintiff cannot demonstrate that the call was causally linked to his EEOC claim. Finally, Defendant argues that Mrs. Taylor's testimony concerning the content of the call is inadmissible hearsay.

The Court will not consider Defendant's arguments. Not only were they already addressed and rejected in the November 4, 2009 Opinion[10], but also the Court specifically limited the pending Motion for Summary Judgment to procedural and evidentiary issues relating to the admissibility of Mrs. Taylor's testimony. Although we granted in part Defendant's Motion for Reconsideration, the Court only reconsidered the aspect of its decision relating to "the unavailability of Plaintiff's wife as a witness," in that her unavailability to testify "adds a layer of hearsay to any testimony regarding the contents of the allegedly retaliatory phone call she received and calls into question the admissibility of the proffered photograph of Plaintiff's caller-

---

[10] In that Opinion, the Court concluded Plaintiff established that a genuine issue of material fact existed as to whether he was subjected to a harassing telephone call in response to his filing of a protected EEOC claim.

id." Doc. 67. The remainder of Defendant's arguments in support of reconsideration were rejected as mere disagreement with the Court's decision.[11] *See* Doc. 67 ("[T]he remainder of Defendant's arguments were considered and rejected in the Court's November 4, 2009 Opinion and . . . mere disagreement with the Court will not suffice to show that the Court overlooked relevant facts or controlling law"). The Court's view of the limited nature of the pending Motion is further supported by its ruling during the July 21, 2010 hearing. In that hearing, the Court permitted Defendants "to make . . . any motion they feel appropriate as it relates to the admissibility of her [Mrs. Taylor's] testimony at trial. Both as [a] procedural matter and as an evidentiary matter, and allow them to make a renewed dispositive motion on the remaining claim in the case based on that testimony." Doc. 75, Tr. 21. Consequently, in its reconsideration of the November 4, 2009 Opinion and in the July 21, 2010 hearing, the Court was explicitly clear that it would only reconsider and entertain a dispositive motion with respect to its decision relating to the procedural and evidentiary issues arising from the admissibility or inadmissability of Defendant's wife, Mrs. Taylor's testimony. Defendant's arguments in support of its Motion for Summary Judgment do not relate to Mrs. Taylor's testimony and, therefore,

[11] The arguments the Court refused to reconsider are the same arguments Defendant again raises in the pending Motion.

are outside the scope of this Motion. To the extent, however, any of Defendant's arguments implicate Mrs. Taylor's testimony, they were already previously rejected by this Court in its November 4, 2009 Opinion and not reconsidered in its June 25, 2010 Order. We will not revisit these decisions and permit Defendant to re-litigate matters already decided and rejected.[12]

The Court finds that disputed issues of material fact exist as to whether Plaintiff was subjected to a harassing telephone call in response to his filing of a protected EEOC claim. These disputed facts preclude entry of summary judgment in favor of Defendant. Mrs. Taylor specifically testified that she answered the phone and heard the comment, "[n]iggers aren't qualified to work in this business. Why you niggers complaining. Niggers shouldn't be in this business."[13] Doc. 87-2, Exhibit C, Dep. 67. She additionally opined that she took the photograph of the caller-id, which reflected that the call originated from Rexam Healthcare, a subsidiary of Amcor. This testimony cures the

---

[12] To the extent Defendant raises arguments not previously considered in its first Motion for Summary Judgement, the Court will not address those arguments because they do not relate to the admissibility or inadmissibility of Mrs. Taylor's testimony. As discussed above, the Court confined this summary judgment Motion to the procedural and evidentiary issues arising from Mrs. Taylor's testimony.

[13] In its November 4, 2009 Opinion, the Court found that "[t]his statement by itself is capable of creating a genuine issue of material fact with respect to the causal relationship between the call and Plaintiff's protected activity." Doc. 56.

hearsay issues that prompted the Court to reconsider its November 4, 2009 denial of summary judgment. Through Mrs. Taylor's testimony, Plaintiff can establish the content of the comment and the authenticity of the caller-id photograph. Defendant's Motion will, therefore, be denied.

## III. CONCLUSION

For the reasons expressed above, Defendant's Motion to Strike the Testimony of Plaintiff's Wife, for Sanctions and for Summary Judgment on Count II of Plaintiff's Complaint [Doc. 76] will be denied. An appropriate order will be entered.

Date: June 29, 2011
At Camden, New Jersey

s/ Noel L. Hillman
NOEL L. HILLMAN, U.S.D.J.