ALONZO J. TAYLOR,

        Plaintiff,

    v.

AMCOR FLEXIBLES,

        Defendant.

Civil No. 07-3477 (NLH/KMW)

**OPINION**

**APPEARANCES:**

Anthony J. DiMarino, III, Esquire
A.J. DiMarino, III, PC
57 Euclid Street
Suite A
Woodbury, New Jersey 08096

H. Francis deLone, Jr., Esquire
P.O. Box 1451
Pottstown, Pennsylvania 19464
    *Attorneys for Plaintiff Alonzo J. Taylor*

Christopher H. Lowe, Esquire
Anjanette Cabrera, Esquire
Seyfarth Shaw LLP
620 Eighth Avenue
32nd Floor
New York, New York 10018
    *Attorneys for Defendant Amcor Flexibles*

**HILLMAN, District Judge**

This matter comes before the Court by way of Defendant

Amcor Flexibles' motion [Doc. No. 141] seeking monetary and

nonmonetary[1] sanctions against Plaintiff's counsel in this litigation. The Court has considered the submissions relevant to this motion, and decides the matter pursuant to Federal Rule of Civil Procedure 78.

For the reasons set forth below, Defendant's motion for sanctions will be denied.

## I.    **JURISDICTION**

Plaintiff originally brought his claims pursuant to both Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2, as well as the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-12(a), and under New Jersey common law. The Court exercised original jurisdiction over Plaintiff's federal claim under 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

## II.   **BACKGROUND & PRETRIAL HEARINGS**

The factual background, procedural history, and Plaintiff's

---

[1]    Although Defendant's motion purports to seek nonmonetary sanctions, Defendant has not identified for the Court the nature of any specific nonmonetary sanctions sought here. Accordingly, Defendant's request for nonmonetary sanctions will be denied.

original claims in this case were set forth at length in the Court's prior Opinions and Orders of November 4, 2009, June 25, 2010, June 29, 2011, and February 6, 2012, and only the facts relevant to the current motion will be repeated here.  After discovery and dispositive motion practice in this case concluded, the parties prepared for trial on Plaintiff's sole remaining claim for retaliation under Title VII and the NJLAD based on an alleged June 5, 2006 telephone call placed to Plaintiff's home.

Plaintiff's retaliation claim essentially alleged that subsequent to filing a charge of racial discrimination against his employer, Defendant Amcor Flexibles, with the Equal Employment Opportunity Commission and the New Jersey Division of Civil Rights, Plaintiff received a retaliatory telephone call at his home at 5:13 a.m. on June 5, 2006.  Plaintiff asserted that an unidentified caller said "[n]iggers aren't qualified to work in this business.  Why you niggers complaining[?]  Niggers shouldn't be in this business[.]"  (See Op. [Doc. No. 92] 2, June 29, 2011.)  Plaintiff's wife, Gail Taylor, testified at her deposition that when the call was made she was the one who answered the phone, heard the contents of the call, and relayed the contents to her husband, Plaintiff Alonzo Taylor.  (Id.)

In preparation for a trial date in early 2012, the Honorable Karen M. Williams, United States Magistrate Judge, conducted the final pretrial conference in this matter on November 4, 2011 and entered a Joint Pretrial Order ("JPO") [Doc. No. 104] on that date. The JPO indicates that it "govern[s] the conduct of the trial in this case" and that amendments to the Order would "be allowed only in exceptional circumstances to prevent manifest injustice." (JPO [Doc. No. 104] 1, Nov. 4, 2011.) The JPO further "urged" counsel "to move to amend in a timely fashion any portion of the [JPO] that must be changed or modified between the filing of the order and the trial date." (Id.)

After entry of the JPO, the parties continued preparing for trial in this matter. Jury selection was originally scheduled to begin on February 1, 2012, and the trial was set to commence on February 2, 2012. At the pretrial charge conference held on January 31, 2012, Plaintiff[2] submitted to the Court and Defendant his final witness list which asserted that the "only witness [would] be the plaintiff himself." (Pl.'s Witness List [Doc.

---

[2]     Plaintiff was not present at the January 31, 2012 charge conference. His attorney, H. Francis deLone, Jr., Esq. appeared at the charge conference on Plaintiff's behalf.

No. 132] 1.)  Upon receipt of Plaintiff's witness list at the
January 31, 2012 charge conference, Defendant raised the issue
that Plaintiff had not listed his wife, Gail Taylor, as a
witness for trial.  Defendant asserted that Ms. Taylor's
testimony regarding the alleged phone call and the content of
the call was necessary to prove Plaintiff's remaining
retaliation claim.  Defendant further argued that any testimony
by Plaintiff regarding the content of the call based on what he
was told by his wife raised hearsay admissibility issues.

Defendant pointed to the Court's June 25, 2010 Order which
previously determined that "the unavailability of Plaintiff's
wife to testify adds a layer of hearsay to any testimony
regarding the contents of the allegedly retaliatory phone call
she received[.]"  (Order [Doc. No. 67] 2, June 25, 2010.)  The
Court recognized in the June 25, 2010 Order that "further
argument [was] necessary to determine the scope of Plaintiff's
potential testimony regarding the phone call ... and whether
such testimony would fall under any hearsay exceptions or [if it
was] otherwise admissible before the Court [could] make a final
determination" with respect to the viability of Plaintiff's
retaliation claim.  (Id. at 3.)

When the issue of Ms. Taylor's potential unavailability as

a witness first arose in late spring/early summer of 2010, the
Court conducted a hearing on July 21, 2010 and ultimately ruled
that Defendant could take Ms. Taylor's deposition.  (Op. [Doc.
No. 92] 4, June 29, 2011.)  At the July 21, 2010 hearing, the
Court also granted Defendant leave, upon completion of Ms.
Taylor's deposition, to make any appropriate motion relating to
the admissibility of her testimony at trial with respect to
procedural and evidentiary issues, including a renewed
dispositive motion on the remaining retaliation claim.  (Id. at
5.)  Following Ms. Taylor's deposition, Defendant filed a motion
[Doc. No. 76] to strike her testimony, for sanctions, and for
summary judgment on the remaining retaliation claim.  The Court
denied that motion by Opinion and Order dated June 29, 2011.
(Op. [Doc. No. 92] 1, June 29, 2011; Order [Doc. No. 93] 1, June
29, 2011.)

     In denying Defendant's request to strike Ms. Taylor's
deposition testimony, the Court explicitly highlighted the legal
significance of Ms. Taylor's testimony in this case.  The Court
noted that her "deposition testimony [was] important to what
remain[ed] of Plaintiff's case" and concluded that "[w]ithout
[such] testimony, summary judgment must be entered in favor of
Defendant because Plaintiff could not establish ... the content

of the [alleged retaliatory] phone call." (Op. [Doc. No. 92] 10, June 29, 2011.) The Court further acknowledged that it was "very mindful that the sanction of striking [Ms.] Taylor's testimony essentially equate[d] to a sanction of dismissal of Plaintiff's claim." (Id. at 10-11.)

Therefore, recognizing the validity of the issues Defendant raised at the January 31, 2012 charge conference based on prior Court rulings, the Court inquired of Plaintiff's counsel whether or not Ms. Taylor would be called as a witness at trial. At that time, Plaintiff's *pro hac vice* counsel, H. Francis deLone, Jr. Esq., asserted that he was unaware that Ms. Taylor's testimony would be necessary at trial. Mr. deLone further informed the Court that he intended to have Plaintiff testify at trial regarding what Ms. Taylor told Plaintiff about the content of the alleged telephone call.

The Court then reiterated to Mr. deLone its June 29, 2011 finding that "[w]ithout [his wife's] testimony, summary judgment must be entered in favor of Defendant because Plaintiff could not establish ... the content of the [alleged retaliatory] phone call." (Op. [Doc. No. 92] 10, June 29, 2011.) Recognizing that such testimony from Plaintiff, rather than his wife, raised hearsay issues that could potentially render such testimony

inadmissible and thereby prevent Plaintiff from producing evidence necessary to his retaliation claim, the Court recessed briefly to allow Mr. deLone an opportunity to contact Plaintiff and Ms. Taylor to determine if she would testify at trial.

When the Court reconvened, Mr. deLone informed the Court that he was unable to reach Ms. Taylor and thus could not make a determination as to whether she would be able and willing to testify at trial. Because Mr. deLone was unable to determine during the short recess whether Ms. Taylor could or would testify at trial, the Court, in order to minimize any inconvenience to potential jurors and to provide Plaintiff with an additional opportunity to secure Ms. Taylor's testimony at trial, adjourned for the day and adjourned jury selection an additional day to February 2, 2012. The Court further directed that the charge conference would reconvene on February 1, 2012 at 3:00 p.m., at which time Mr. deLone would be required to inform the Court as to whether Ms. Taylor would testify at trial. The Court expressly noted that it would entertain a renewed motion for summary judgment by Defendant if Mr. deLone notified the Court on February 1, 2012 that Ms. Taylor would not testify.

When the Court reconvened on February 1, 2012 at 3:00 p.m.,

Mr. deLone represented to the Court that Ms. Taylor was not going to be available to testify at trial. Mr. deLone then announced his intention to seek to admit Ms. Taylor's deposition testimony since she would not be available at trial. Upon further inquiry by the Court regarding the reasons for Ms. Taylor's inability to testify at trial, Mr. deLone represented that she was not available due to the fact that Plaintiff and Ms. Taylor were in the process of getting divorced. At that time, Defendant's counsel questioned whether Ms. Taylor was "unavailable" as that term is used in the Federal Rules of Evidence and Civil Procedure,[3] or whether she was simply

---

[3] Federal Rule of Evidence 804 (a) sets forth the criteria for being unavailable and provides in relevant part that "[a] declarant is considered to be unavailable as a witness if the declarant: (1) is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies; (2) refuses to testify about the subject matter despite a court order to do so; (3) testifies to not remembering the subject matter; (4) cannot be present or testify at the trial or hearing because of death or a then-existing infirmity, physical illness, or mental illness; or (5) is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure" the declarant's attendance or testimony. FED. R. EVID. 804(a).
    Federal Rule of Civil Procedure 32(a)(4) which governs the use of depositions in court proceedings where a witness is unavailable provides in pertinent part, "[a] party may use for any purpose the deposition of a witness, ... if the court finds: (A) that the witness is dead; (B) that the witness is more than 100 miles from the place of hearing or trial …; (C) that the witness cannot attend or testify because of age, illness, infirmity, or imprisonment; (D) that the party offering the

unwilling to testify. Defendant's counsel also inquired whether Mr. deLone planned to subpoena Ms. Taylor to testify at trial. Defendant's counsel then indicated that if Ms. Taylor was simply unwilling to testify and that if Plaintiff did not intend to subpoena her, then Defendant was renewing its motion for summary judgment on the retaliation claim.

Following the renewed motion, Mr. deLone again represented to the Court that Ms. Taylor was not available as a witness, that he felt he did not have sufficient time to subpoena her, and that he would not otherwise try to compel her appearance as a witness at trial. The Court thereafter granted Defendant's renewed motion for summary judgment on the retaliation claim. (See Op. and Order [Doc. Nos. 134, 135], Feb. 6, 2012.) The Court's ruling on the retaliation claim, along with its prior rulings were affirmed by the Third Circuit Court of Appeals in an Opinion filed on December 20, 2012. Defendant now moves for sanctions pursuant to 28 U.S.C. § 1927 and the Court's inherent powers.[4]

---

deposition could not procure the witness's attendance by subpoena; or (E) on motion and notice, that exceptional circumstances make it desirable – in the interest of justice and with due regard to the importance of live testimony – to permit the deposition to be used." FED. R. CIV. P. 32(a)(4).

[4]    To the extent Defendant's motion can be construed as

## III. **DISCUSSION**

Pursuant to 28 U.S.C. § 1927, "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "It ... [is] well settled in the Third Circuit that 28 U.S.C. § 1927 requires a finding of four elements for the imposition of sanctions: [the offending attorney] '(1) multiplied proceedings; (2) unreasonably and vexatiously; (3) thereby increasing the cost of the proceedings; (4) with bad faith or with intentional misconduct." In re Beers, 399 F. App'x 748, 749 (3d Cir. 2010) (citing LaSalle Nat. Bank v. First Connecticut Holding Group, LLC, 287 F.3d 279, 288 (3d Cir. 2002)).

As noted by the Third Circuit, "a finding of willful bad

---

seeking sanctions pursuant to Federal Rule of Civil Procedure 11, (see Def.'s Br. 13), such a request must be denied under the Pensiero rule which "requires 'that all motions requesting Rule 11 sanctions be filed in the district court before the entry of a final judgment.'" Lewis v. Smith, 480 F. App'x 696, 699 (3d Cir. 2012) (citing Mary Ann Pensiero, Inc. v. Lingle, 847 F.2d 90, 99-100 (3d Cir. 1988)). Defendant's formal motion for sanctions was originally filed on March 8, 2012, approximately one month after the Court entered a final judgment in favor of Defendant on February 6, 2012. Accordingly, Defendant can no longer seek Rule 11 sanctions. See Lewis, 480 F. App'x at 699; Mary Ann Pensiero, Inc., 847 F.2d at 99-100.

faith on the part of the offending lawyer is a prerequisite for imposing attorney's fees under this provision." Hackman v. Valley Fair, 932 F.2d 239, 242 (3d Cir. 1991) (citing Ford v. Temple Hosp., 790 F.2d 342, 347 (3d Cir. 1986)). In the Third Circuit, "bad faith [serves as] ... a necessary predicate for a violation of section 1927 in order to 'avoid chilling an attorney's legitimate ethical obligation to represent his client zealously.'" Hackman, 932 F.2d at 243 (quoting Baker Indus., Inc. v. Cerberus Ltd., 764 F.2d 204, 208 (3d Cir. 1985)); see also LaSalle, 287 F.3d at 289 (recognizing that "the bad faith requirement is necessary for a finding of liability, otherwise 'an attorney who might be guilty of no more than a mistake in professional judgment in pursuing a client's goals might be made liable for excess attorneys' fees[.]'") (citation omitted).

The imposition of attorney's fees and costs under Section 1927 is reserved for behavior that is of an "egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation." In re: Orthopedic Bone Screw Prods. Liab. Litig., 193 F.3d 781, 795 (3d Cir. 1999) (citation omitted). "Consequently, sanctions may not be imposed under § 1927 absent a finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or

well-intentioned zeal." <u>LaSalle</u>, 287 F.3d at 289.  Moreover,

"[b]ad faith should not be lightly inferred, and counsel should

be given significant leeway to pursue arguments on a client's

behalf." <u>Lewis v. Smith</u>, 480 F. App'x 696, 699 (3d Cir. 2012).

**IV.   <u>ANALYSIS</u>**

In seeking sanctions against Plaintiff's *pro hac vice*

counsel H. Francis deLone, Jr., Esq.,[5] Defendant argues that "Mr.

deLone [clearly] multiplied the proceedings by failing to

produce Ms. Taylor at trial, by failing to timely notify Amcor

or the Court that he would not produce her ... and by

proactively misleading the Court and Amcor by listing [Ms.

Taylor] as a trial witness in the Joint Pre-trial Order and

objecting to the use of her transcript because [Ms. Taylor] was

not 'unavailable' under the Federal Rules."  (Def.'s Mem. of Law

in Further Supp. of its Oral Mot. for Sanction [Doc. No. 142]

(hereinafter, "Def.'s Mem."), 7.)  Defendant argues that "Mr.

deLone knew, by virtue of the this Court's" prior rulings "that

he had to produce Ms. Taylor at trial."  (<u>Id.</u>)

---

[5]   Defendant also seeks sanctions against Plaintiff's local
counsel, Anthony J. DiMarino, III, Esq.  The Court addresses
this request <u>infra</u>.

Defendant further contends that Ms. Taylor's "absence should have been revealed in the Joint Pre-trial Order and an appropriate *motion in limine*" and that "Mr. deLone's conscious disregard for the Court's prior rulings not only prejudiced Amcor, it also [caused] the Court to expend unnecessary resources to prepare for a trial that could not proceed." (<u>Id.</u> at 7-8.) As a result of Mr. deLone's conduct, Defendant requests that the Court "levy monetary sanctions against Mr. deLone ... in the amount equal to the costs Amcor incurred in needless trial preparation" which is no less than $147,031.94. (<u>Id.</u> at 2.) Defendant also seeks an additional $750.00 for travel expenses incurred by its company representative, Elissa Reiner, who traveled from Chicago to New Jersey to appear for the trial as originally scheduled before this Court. (<u>Id.</u> at 2 n.3.)

Both Plaintiff's *pro hac vice* counsel, Mr. deLone, and his local counsel, Mr. DiMarino, oppose Defendant's motion for sanctions. With respect to Plaintiff's *pro hac vice* counsel, Mr. deLone represents to the Court that originally he "was planning to present [Ms.] Taylor as a trial witness and identified her as such to the Court and opposing counsel" but that his "plans changed ... when he learned that divorce

proceedings that were instituted during the pe[n]dency of this action were becoming more and more bitter." (Pl.'s Mem. in Opp'n to Def.'s Renewed Mot. for Sanctions [Doc. No. 151] (hereinafter, "deLone's Opp'n"), 3.) Mr. deLone asserts that upon learning of the bitter nature of the divorce proceedings between Plaintiff and Ms. Taylor, he "concluded that the presentation of [Ms.] Taylor as a witness would entail too great a risk to [P]laintiff's case." (<u>Id.</u>)

Accordingly, he advised the Court and opposing counsel that Ms. Taylor would not testify at trial. Thus, Mr. deLone argues that his "decision not to present [Ms. Taylor] as a witness, ... did not multiply or delay [the] proceedings in this case[,]" but actually "shortened [the] judicial proceedings" because the Court entered summary judgment in Defendant's favor and the parties did not proceed to trial. (<u>Id.</u> at 2-3.) Mr. deLone contends that "had [he] wanted to delay proceedings, he could have done so by failing to advise the Court of his decision not to present plaintiff's wife as a witness." (<u>Id.</u> at 4.) Rather, Mr. deLone asserts that because he had "a valid reason for deciding that he would not call Mrs. Taylor as a witness, counsel did not act vexatiously, unreasonably or in bad faith" and thus no sanctions should be imposed. (<u>Id.</u>)

Plaintiff's local counsel, Mr. DiMarino, opposes the imposition of sanctions against him.  Mr. DiMarino argues generally that Defendant's motion fails to present any evidence or arguments to demonstrate that any of Mr. DiMarino's actions in his role as local counsel warrant sanctions and amount to willful bad faith.  (Br. in Opp'n to Def.'s Mot. for Sanctions Against Pl.'s Local Counsel [Doc. No. 152] 7.)

As set forth <u>supra</u>, a prerequisite to the imposition of sanctions under Section 1927 is a finding of willful bad faith on the part of the offending attorney.  <u>See</u> <u>Hackman</u>, 932 F.2d at 242; <u>see also</u> <u>In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions</u>, 278 F.3d 175, 188 (3d Cir. 2002).  In ruling on Defendant's motion, the Court must first address the threshold inquiry of whether there is sufficient evidence to support a finding that Mr. deLone acted with the requisite willful bad faith to warrant the imposition of sanctions, or whether Mr. deLone's conduct was the result of a mistake in professional judgment, a "misunderstanding, bad judgment, or well-intentioned zeal."  <u>LaSalle</u>, 287 F.3d at 289; <u>see also</u> <u>Baker Indus. Inc. v. Cerberus, Ltd.</u>, 764 F.2d 204, 208 (3d Cir. 1985) (interpreting Section 1927 "to require a showing of actual bad faith" because "otherwise, an attorney who might be guilty

of no more than a mistake in professional judgment in pursuing a client's goals might be made liable for excess attorneys' fees under section 1927.")

"[A] district court's finding of bad faith or the absence of bad faith in a particular case is a factual determination[.]" Ford v. Temple Hosp., 790 F.2d 342, 347 (3d Cir. 1986). In making this determination, the Court recognizes that "[i]ndications of this bad faith" include "findings that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." In re Prudential, 278 F.3d at 188. As the Third Circuit has cautioned, "[b]ad faith should not be lightly inferred, and counsel should be given significant leeway to pursue arguments on a client's behalf." Lewis, 480 F. App'x at 699.

Here, Defendant has limited its motion for sanctions only to Mr. deLone's "willful acts of bad faith" which occurred "since November 4, 2011 – the date the Pre-Trial Order was entered and it was clear that trial preparation had commenced, namely; his failure to produce Plaintiff's wife, Gail Taylor, to testify." (Def.'s Mem. 1.) On the issue of bad faith, Defendant argues that "[t]he fact that Mr. deLone insisted on

the eve of trial that he could proceed without [Ms. Taylor's] critical testimony, when he clearly knew otherwise from the Court's specific rulings [i.e., the June 25, 2010 and June 29, 2011 Opinions and Orders] and the significant proceedings on that very issue — is egregious behavior, stamped by bad faith, and violative of recognized standards of legal practice." (Def.'s Br. 7.) Defendant also points to Mr. deLone's "conscious disregard for the Court's prior rulings" as evidence of Mr. deLone's bad faith and argues that this prejudiced Defendant and resulted in the unnecessary expenditure of Court resources in preparing for trial. (Id. at 8.)

Defendant further contends that "it defies credulity for Mr. deLone to claim that he did not understand that [Ms. Taylor] was a material witness upon whom Plaintiff's [retaliation] claim hinged." (Id. at 8.) Defendant points to several portions of the Court's June 25, 2010 and June 29, 2011 Opinions to demonstrate that the necessity of Ms. Taylor's testimony should have been clear to Mr. deLone. (Id. at 8-9.) Defendant also highlights for the Court that when Amcor identified Ms. Taylor's deposition transcript as a trial exhibit in the event she was unavailable to testify under Rule 32, Mr. deLone objected to the use of her deposition transcript at trial. (Id. at 9.)

Defendant argues that Mr. deLone's "bad faith is further marked by his admissions made openly" before the Court wherein he stated, "'I don't know if she is or isn't [available]. I wasn't initially planning to call her, so now I have to do that.'" (Id.) (citing Hearing Tr. [Doc. No. 136] 58:4-6, Jan. 31, 2012.)

Defendant thus argues that taking all of these circumstances together, "there can be no conclusion other than" to find that "Mr. deLone acted in bad faith in an attempt to mislead both the Court and Amcor into believing that [Ms.] Taylor would in fact testify at trial." (Id. at 9.) The Court construes Defendant's argument to be that because Mr. deLone's claim that he misunderstood the Court's prior orders and the necessity of Ms. Taylor's testimony is not worthy of belief the Court must interpret his conduct as evidence of his willful bad faith.

In this case, the Court is called upon to determine whether Mr. deLone's conduct was the result of willful bad faith as required under Section 1927, or whether his conduct was merely the result of what might fairly be considered as a mistake in professional judgment, a misunderstanding, bad judgment, or well-intentioned zeal (which perhaps went awry). Such a determination must be made heeding the Third Circuit's warning

that "[b]ad faith should not be lightly inferred, and counsel should be given significant leeway to pursue arguments on a client's behalf." <u>Lewis</u>, 480 F. App'x at 699.  Moreover, "[t]he power to sanction under § 1927 necessarily 'carries with it the potential for abuse, and therefore the statute should be construed narrowly and with great caution[.']"  LaSalle, 287 F.3d at 289 (citation omitted).

The circumstances of this case present an extremely close call for the Court.  There is very little doubt that Mr. deLone's conduct[6] resulted in a situation where Defendant went through the extensive, costly, and arduous process of preparing for trial in this matter over a period of several months, only to end up renewing its previous motion for summary judgment on the basis that Plaintiff could not prove his retaliation claim without Ms. Taylor's testimony – a motion that the Court granted precisely on that basis.  Defendant's argument that Mr. deLone's

---

[6]    Mr. deLone's conduct includes: (1) failing to recognize the necessity of Ms. Taylor's testimony to prove Plaintiff's retaliation claim; (2) failing to insure her availability to testify at trial; (3) failing to notify the Court and Defendant at the earliest possible time after the November 4, 2011 pretrial order was entered and before the hearings in January of 2012 that there was an issue as to Ms. Taylor's availability; and (4) failing to secure her availability by subpoena, or to otherwise make an appropriate motion to admit the necessary evidence by an alternative means.

conduct caused the proceedings to be "multiplied" and thereby contributed to the accumulation of what turned out to be unnecessary attorneys' fees spent on trial preparation is certainly not lost on the Court. Defendant has clearly satisfied its burden on that element of the sanctions analysis.

The Court nonetheless concludes that Defendant has failed to meet its burden to establish that Mr. deLone's conduct constitutes the sort of willful bad faith, contemplated by the Third Circuit in Hackman, Ford, and LaSalle, sufficient to warrant the imposition of sanctions in excess of $147,000. While the Court certainly does not condone Mr. deLone's conduct or point to it as a model of acceptable behavior for attorneys litigating cases in this District, the Court finds that Mr. deLone's conduct falls just shy of demonstrating the type of willful bad faith that justifies sanctions under 28 U.S.C. § 1927.

Construing the statute narrowly and bearing in mind that bad faith should not be lightly inferred, it appears to the Court that at the time the November 4, 2011 JPO was entered, Mr. deLone genuinely intended to call Ms. Taylor as to testify regarding the alleged retaliation against her then husband. Accordingly, Mr. deLone identified Ms. Taylor as a witness in

the JPO and also objected to the use of her deposition testimony

as a defense exhibit at trial.  (See JPO [Doc. No. 104] 10);

(see also deLone's Opp'n 3) ("On the basis of the information

regarding this telephone call that [Ms. Taylor] had provided,

plaintiff's counsel was planning to present Mrs. Taylor as a

trial witness and identified her as such to the Court and

opposing counsel.").

However, at some point after November 4, 2011 and before

January 31, 2012, Mr. deLone's blueprint for trial was altered

when he learned of the growing antagonism and hostility between

Plaintiff and Ms. Taylor related to their pending divorce.[7]  (See

_____

7    Plaintiff's case was originally filed in July of 2007.
Approximately four years later, on July 11, 2011, Ms. Taylor
instituted divorce proceedings against Plaintiff in the Superior
Court of New Jersey, Chancery Division-Family Part for
Burlington County.  (See Ex. A. to Def.'s Reply Mem. [Doc. No.
153] 1.)
     The Court recognizes that the JPO was entered only four
months later, in November of 2011.  Given that the divorce
proceedings had only just begun in family court at the time the
JPO was entered, the Court finds it reasonable to conclude that:
(1) the divorce proceedings had not yet escalated to the point
where "bitterness" between Plaintiff and Ms. Taylor had
developed; or (2) even if such bitterness had developed, that
Plaintiff may not have informed Mr. deLone of that fact at the
time.  Imputing to Mr. deLone knowledge of when the bitterness
in the divorce proceedings developed, without evidence of the
same, requires the Court to engage in unwarranted speculation
and to make a series of assumptions that lack concrete factual
support.
     Furthermore, at the time this case was set to go to trial
in February of 2012, the divorce proceeding had only been

22

deLone's Opp'n 3) ("Counsel's plans changed" because "he learned that divorce proceedings . . . were becoming more and more bitter.")  Mr. deLone represents that based on this information he made a calculated, strategic decision not to call Ms. Taylor as a witness because the hostility between Ms. Taylor and Plaintiff would pose too great of a risk to the Plaintiff's case.  (Id.)  Apparently Mr. deLone made this decision under the mistaken belief Ms. Taylor's testimony was not necessary and that Plaintiff could testify to the contents of the call based on an exception to the hearsay rule that Mr. deLone believed the Court had not yet ruled upon.[8]

---

pending approximately seven to eight (7-8) months.  As Defendant accurately points out though, Mr. deLone does not provide the date on which he first learned that Plaintiff's divorce proceedings were becoming increasingly bitter and thus he decided not to call Ms. Taylor as a witness.  This could have occurred as early as November 5, 2011 or as late as January 31, 2012 when Mr. deLone submitted his witness list naming Plaintiff as the only witness he would call.  However, there is no evidence before the Court from which to glean that fact, and the Court is not inclined to speculate on that issue.

[8]     (See Hearing Tr. [Doc. No. 136] 60:4-15, Jan. 31, 2012) (Mr. deLone: "I would ask for some brief period of time to be able to do that, to find out what the story is with [Ms. Taylor] being able to testify, which I don't know at this point in time, because I was presuming that she was not necessary.  If I misunderstood Your Honor's presumptions, I'm sorry.  I did not realize that Your Honor considered her a necessary witness. ... But, in any event, I would ask for a short period of time, so that I can have a chance to see about her availability and, if not about her availability, to at least present some arguments

The Court can certainly appreciate Mr. deLone's unwillingness to present testimony by a witness – Plaintiff's soon-to-be ex-wife – who was outwardly hostile toward his client and whom Mr. deLone presumably feared would not be a cooperative or helpful witness.  Mr. deLone's desire to avoid such an occurrence was clearly in his client's best interest and constitutes what this Court considers to be well-intentioned zeal.  However, Mr. deLone's attempt at zealous advocacy went awry when he overlooked one key aspect in this case.  Ms. Taylor was the only witness who actually heard the content of the alleged retaliatory phone call.  Admissible evidence, in some form, regarding the content of that call was required to prove Plaintiff's retaliation claim.

While Mr. deLone may have wanted to proceed without Ms. Taylor's testimony out of fear she would sabotage the case and thus decided to have Plaintiff testify as to the contents of the call, he failed to take into the necessary steps this change in strategy required.  For example, at a minimum, Mr. deLone needed to: (1) address the double hearsay issue raised by Plaintiff's proffered testimony; (2) seek an amendment to the JPO to include

---

why plaintiff should be allowed to testify.")

Ms. Taylor's deposition testimony as a trial exhibit, and exclude her as a witness; (3) file any appropriate motions in limine seeking to admit the necessary evidence regarding the call; and (4) provide adequate notice to the Court and Defendant that Ms. Taylor was no longer going to be a witness and that Plaintiff would prove his claim by an alternative means.

Although Mr. deLone's conduct certainly resulted in a tremendous inconvenience and cost to Defendant, which could have been easily avoided if Mr. deLone conducted a thorough review of the Court's prior Opinions and Orders, rather than simply assuming Plaintiff could testify when he learned of the hostility between Plaintiff and Ms. Taylor, convincing evidence that Mr. deLone acted with willful bad faith in this case is lacking. Given that the statute is to be construed narrowly, and that bad faith should not be lightly inferred, the Court will not impose sanctions on Mr. deLone here.[9]

While it can be fairly said that Mr. deLone failed to properly litigate this case as the parties prepared for trial, "bad faith may [only] ... be inferred 'when the attorney's

---

[9]     Because the Court finds that the conduct of Plaintiff's *pro hac vice counsel*, Mr. deLone, does not warrant the imposition of sanctions against him, the Court need not address the parties' arguments regarding whether sanctions against local counsel are proper in this instance.

actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose[.]'" <u>Alphonso v. Pitney Bowes, Inc.</u>, 356 F. Supp. 2d 442, 452 (D.N.J. 2005) (citation omitted). Here, the Court is unable to conclude that Mr. deLone's actions were "so completely without merit as to require the conclusion" that he acted in bad faith. Rather, this case presents an acute example of what this Court considers to be a genuine mistake in professional judgment in pursuing a client's goals, <u>see</u> <u>LaSalle</u>, 287 F.3d at 289. Mr. deLone's presumably late notification of the bitterness of Plaintiff's divorce proceeding, coupled with his purported misunderstanding of the necessity of Ms. Taylor's testimony leads the Court to conclude that Mr. deLone did not act in bad faith in this case and should not be sanctioned.[10]

---

[10] Although Defendant purportedly seeks sanctions pursuant to the Court's inherent powers, Defendant provides virtually no analysis regarding the appropriateness of such sanctions here. Accordingly, the Court also denies Defendant's motion to impose sanctions under the Court's inherent powers.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant Amcor Flexibles, Inc.'s motion for sanctions is denied.  An Order consistent with this Opinion will be entered.


Dated: <u>September 18, 2013</u>          <u>s/ Noel L. Hillman</u>
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.